No. 36,711

ALICE CLARK, *Appellee*, v. EDDIE AXLEY, *Appellant*.

(176 P. 2d 256)

Opinion filed January 25, 1947.

*W. J. King,* of Geuda Springs, was on the briefs for the appellant.

*W. H. Schwinn,* of Wellington, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to enforce a contract for the conveyance of real estate. Defendant's demurrer to plaintiff's amended petition was overruled and he appeals.

For present purposes, it may be said that the amended petition alleged that the defendant had formerly owned the northeast quarter of section 1, township 34 south, range 2 east, in Sumner county, hereafter called the real estate, and under date of July 1, 1934, had executed two described mortgages to secure payment of $2,200 and $1,100, and that the last mortgage was released of record on January 15, 1944. In 1938, the defendant and his wife conveyed the real estate by warranty deed to R. C. Hayes and Lovie J. Hayes, subject to the mortgages, and in the same year the last named persons conveyed the real estate by warranty deed to the plaintiff, subject to the mortgages. Payments on the mortgages became in default and foreclosure was threatened and as a result of conversations between plaintiff and defendant, on February 13, 1943, they entered into a contract, the general terms of which are pleaded. Copies of the contract and of the deed therein mentioned were made part of the amended petition and attached to it as exhibits.

The contract was dated February 13, 1943. It is not artistically drawn but in general it was provided that if Axley, party of the second part, would make the payments and perform the covenants to be performed by him, Alice Clark, party of the first part, would convey the real estate to him by warranty deed subject to the mortgage loan. Second party agreed to assume the loan and make the payments necessary to put the loan in good standing and to pay the delinquent taxes and to then endeavor to sell the land and divide all profits with first party on any sale made within two years from date "and first party [Clark] is also to be allowed to make sale of said land and if she sells the same then first party is to be paid his [her] part of the profit of said sale, if made within two years, and second party [Axley] will then make a deed to the party buying said land, at any bona fide sale." Provisions of the contract as to placing deed in escrow and for its delivery to Axley need not be reviewed.

The deed was dated February 13, 1943, and was a warranty deed from Alice Clark, a widow, to Eddie Axley, conveying the real estate, the grantee assuming the mortgage loans and delinquent taxes.

It was further alleged in the amended petition that on January 25, 1945, and within the two years provided in the contract, plaintiff entered into a contract of sale with one W. E. Cradit, the contract and $200 earnest money being placed in escrow. It was alleged the sale was a bona fide one. A copy of the contract was attached as an exhibit and made part of the petition. The contract of sale is noted briefly. It stated that under the agreement between plaintiff and defendant, Mrs. Clark had the right to sell the real estate and that she agreed to sell the real estate and second party (Cradit) agreed to purchase it for $4,500, and that the contract and $200 earnest money should be placed in escrow in a named bank. Mrs. Clark agreed to procure from Eddie Axley, as provided by the terms of the agreement between them, a warranty deed executed by Eddie Axley and wife, which would convey marketable title. Reference was made to an abstract of title; that the property was subject to a mortgage and that the $4,500 was not over and above the mortgage but included it. Other provisions are not of present interest.

The amended petition further alleged that plaintiff caused to be served upon defendant a notice to quit the real estate and a demand for a deed, and requested defendant to meet her in order that they might calculate the profits from the sale and divide the same as agreed upon between them. Copy of this document was attached. Plaintiff further alleged that defendant had paid certain taxes, but she did not know the exact amount he paid the mortgagee, but that there was a substantial profit and she was entitled to one-half thereof under the agreement, and that defendant had refused to fulfill his part of the agreement.

Under a second cause of action plaintiff incorporated the allegations of her first cause of action, and alleged further that the sale of the real estate under her contract with Cradit was a bona fide sale and she was entitled to have her contract with defendant specifically enforced, and that defendant had failed and refused to make a deed to Cradit. She prayed judgment on her first cause of action for one-half of the profits from the sale as calculated by the court in accordance with the terms of her contract with defendant,

and on her second cause of action for a decree of specific performance of the contract between herself and the defendant and that defendant be ordered to execute a deed to Cradit within a time to be fixed by the court and on failure of defendant to perform, the court, by its judgment and decree, vest title in Cradit upon his payment of the purchase price, and that she have such other relief as equity and good conscience afford.

To this amended petition defendant filed a motion, the purpose of which was to have plaintiff allege whether defendant was a single man when he contracted with her and whether defendant and his family were occupying the real estate as their homestead, whether Axley's wife was a party to the contract between plaintiff and defendant; whether plaintiff was acting as agent of Cradit, and to have certain allegations stricken. This motion was denied and defendant then filed his demurrer for the reason the petition stated no cause of action; that any cause of action stated was barred by the statute of frauds and the homestead statutes, followed by seven specifications to the effect that defendant's wife did not sign the contract with plaintiff; that no cause of action for damages was stated; that as to the second cause of action Cradit and not plaintiff was the real party in interest and that neither defendant nor his wife had entered into any contract with Cradit, nor any contract in which Cradit's name appears. This demurrer was overruled and defendant perfected his appeal to this court. His specifications of error cover the trial court's ruling on the motion and on the demurrer.

It may be observed that at this stage of the proceedings we are interested in the ruling on the motion only as it affects the liberal or strict construction to be given the allegations of the amended petition when tested by a demurrer.

Appellant first contends that the facts pleaded show that appellee is barred by the statute of frauds, because appellant's wife was not a party to and did not sign the contract between appellee and appellant, dated February 13, 1943, and that appellant's wife had an inchoate interest in the real estate. In our opinion this contention cannot be sustained. The contract referred to was made at a time when appellee, not appellant, was the owner of the real estate, and it provided for a deed to appellant which was made the same day. In determining the rights of the parties both the contract and deed had to be considered. (*In re Estate of Garden*, 158 Kan. 554, 148

P. 2d 745; *Steele v. Nelson,* 139 Kan. 559, 32 P. 2d 253; *Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594; *Farmers Equity Coöp. Ass'n. v. Tice,* 122 Kan. 127, 251 Pac. 421; *Hudson v. Riley,* 104 Kan. 534, 180 Pac. 198; and cases cited therein.) Any right that appellant's wife would or could receive would be subject to the conditions under which appellant received the title.

It is also suggested that the contract is unenforceable under the statute of frauds because Cradit, who later purchased from appellee, did not sign the contract, and our attention is directed to *Banta v. Newbold,* 108 Kan. 578, 196 Pac. 433, where it was held that a writing to be effective must not only be signed by the party to be charged but designate the party in whose favor he is to be charged. The instant contract satisfies that requirement for it is signed by appellant, who is to be charged and by appellee in whose favor he is to be charged. On the assumption appellant was correct on his first contention he further contends the reference in the contract between appellee and Cradit to the contract between appellant and appellee did not supply the claimed defect, citing *Riffel v. Dieter,* 159 Kan. 628, 157 P. 2d 831. We mention this latter contention only that it may not be said to have been overlooked. It cannot be sustained under the situation here existing.

It is also suggested by the appellant that under the facts alleged plaintiff may not recover because of our homestead laws, and our attention is directed to the rule that specific performance for the conveyance of a homestead cannot be compelled where the husband alone signed the contract without the knowledge or consent of the wife, citing *Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267; *Thompson v. Millikin,* 102 Kan. 717, 172 Pac. 534; *Tucker v. Finch,* 106 Kan. 419, 188 Pac. 235; *Banta v. Newbold,* supra. The rule stated is correct but its application here is not. At the time the deed from appellee to appellant, dated February 13, 1943, was executed, and the contract of the same date between the same parties was made providing for delivery of the deed to appellant upon his performing his obligations under the contract, the real estate belonged to appellee, and appellant and his wife had no homestead interest in the real estate. At the time the contract was made the wife of appellant had no homestead rights in the real estate, she was not a necessary party to the contract between appellee and appellant, and the fact that appellant and his wife may, after the deed to him was delivered, have established a homestead on the real estate, did not

make the previously executed contract unenforceable under any homestead law theory. The rights of appellant's wife could rise no higher than their source and were subject always to the conditions under which appellant obtained title to the real estate and as fixed by the contract of February 13, 1943.

With reference to the second cause of action, appellant argues that appellee seeks to enforce a contract for the benefit of a third person, and that under the contract of February 13, 1943, appellee was only an agent for appellant, and as such agent could make no contract binding upon appellant as her principal, citing *Cox v. Chalfant*, 105 Kan. 127, 181 Pac. 548; *Firestone v. Jarvis*, 133 Kan. 562, 1 P. 2d 250; *Orr v. Rieger*, 133 Kan. 558, 300 Pac. 1074. It is not necessary that we discuss these cases, for as we construe the contract presently involved, it cannot be said that appellee was acting in any capacity as agent of the appellant. Under the contract she reserved to herself an absolute right to make a bona fide sale within a period of two years, and under her allegations that is what she did. Under her contract with the appellant, he agreed to convey to her purchaser, and so far as the allegations of her petition are concerned there appears to be no reason why appellant should not perform. Appellant does not follow out at any length his contention that the second cause of action is not for the benefit of appellee but for the benefit of a third person. It appears from the contract of February 13, 1943, that appellee had a right to sell the real estate, and under that contract upon sale made, she was to receive an amount subject to calculation under the contract. Unless she can compel the appellant to perform, she loses the benefit of the contract. And it may be remarked that unless she can compel appellant to perform his contract with her, she may be subject to an action on her contract with Cradit. The fact, however, that Cradit will benefit from appellant's performance of his contract with her does not mean that such performance is not for her benefit, under the contract.

We conclude the trial court did not err in its ruling on the demurrer and it is affirmed.